# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | | |
|---|---|---|
| **MICHAEL L. BURRAGE, JR.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **V.** | ) | **Case No. 4:13CV1421 SNLJ** |
| | ) | **(NCC)** |
| **CAROLYN W. COLVIN,** | ) | |
| **Acting Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.[1]** | ) | |

## REPORT AND RECOMMENDATION OF
## UNITED STATES MAGISTRATE JUDGE

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner denying the application of Michael L. Burrage, Jr. (Plaintiff) for Disability Insurance Benefits (DIB) under Title II of the Social Security Act (the Act), and for Supplemental Security Income (SSI) under Title XVI of the Act. See 42 U.S.C. §§ 401, 1381. Plaintiff has filed a brief in support of the Complaint. (Doc. 16). Defendant has filed a brief in support of the Answer. (Doc. 19). The cause was referred to the undersigned United States Magistrate Judge for a report and recommendation pursuant to Title 28 U.S.C. § 636(b)(1). (Doc. 12).

## I.
## PROCEDURAL HISTORY

Plaintiff filed his applications for DIB and SSI on October 15 and October 30, 2009, respectively, and alleged a disability onset date of September 17, 2009. (Tr. 158-63). Plaintiff's

---

[1] Carolyn W. Colvin became Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, she should be substituted for Michael J. Astrue as the defendant. No further action need be taken to continue this suit by reason of the last sentence of § 205(g) of the Act.

applications were denied, and he requested a hearing before an administrative law judge (ALJ). (Tr. 45). By decision dated January 27, 2012, the ALJ found Plaintiff not disabled, through the date of the ALJ's decision. (Tr. 46-60). Plaintiff filed a request for review with the Appeals Council, which denied Plaintiff's request on May 16, 2013. (Tr. 1-6, 10). As such, the ALJ's decision is the final decision of the Commissioner.

## II.
## LEGAL STANDARDS

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920, 404.1529. "'If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled.'" Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005) (quoting Eichelberger v. Barnhart, 390 F.3d 584, 590-91 (8th Cir. 2004)). In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. §§ 416.920(b), 404.1520(b). Second, the claimant must have a severe impairment. 20 C.F.R. §§ 416.920(c), 404.1520(c). The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities." Id. "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work." Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting Caviness v. Massanari, 250 F.3d 603, 605 (8th Cir. 2001) (citing Nguyen v. Chater, 75 F.3d 429, 430-31 (8th Cir. 1996)).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d); pt. 404, subpt. P, app. 1. If the claimant has one of, or the medical equivalent of, these

impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. See id.

Fourth, the impairment must prevent the claimant from doing past relevant work. 20 C.F.R. §§ 416.920(f), 404.1520(f). The burden rests with the claimant at this fourth step to establish his or her Residual Functional Capacity (RFC). See Steed v. Astrue, 524 F.3d 872, 874 n.3 (8th Cir. 2008) ("Through step four of this analysis, the claimant has the burden of showing that she is disabled."); Eichelberger, 390 F.3d at 590-91; Masterson v. Barnhart, 363 F.3d 731, 737 (8th Cir. 2004); Young v. Apfel, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). The ALJ will review a claimant's RFC and the physical and mental demands of the work the claimant has done in the past. 20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent the claimant from doing any other work. 20 C.F.R. §§ 416.920(g), 404.1520(g). At this fifth step of the sequential analysis, the Commissioner has the burden of production to show evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC. See Steed, 524 F.3d at 874 n.3; Young, 221 F.3d at 1069 n.5. If the claimant meets these standards, the ALJ will find the claimant to be disabled. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." Id. See also Harris v. Barnhart, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."); Charles v. Barnhart, 375 F.3d 777, 782 n.5 (8th Cir. 2004) ("[T]he burden of production shifts to the Commissioner at step five to submit evidence of other work in the national economy that [the claimant] could perform, given her RFC."). Even if a court finds that there is a

preponderance of the evidence against the ALJ's decision, that decision must be affirmed if it is supported by substantial evidence. See Clark v. Heckler, 733 F.2d 65, 68 (8th Cir. 1984). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002). See also Cox v. Astrue, 495 F.3d 614, 617 (8th Cir. 2007). In Bland v. Bowen, 861 F.2d 533, 535 (8th Cir. 1988), the Eighth Circuit Court of Appeals held:

> [t]he concept of substantial evidence is something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the Secretary may decide to grant or deny benefits without being subject to reversal on appeal.

See also Lacroix v. Barnhart, 465 F.3d 881, 885 (8th Cir. 2006) ("[W]e may not reverse merely because substantial evidence exists for the opposite decision.") (quoting Johnson v. Chater, 87 F.3d 1015, 1017 (8th Cir. 1996)); Hartfield v. Barnhart, 384 F.3d 986, 988 (8th Cir. 2004) ("[R]eview of the Commissioner's final decision is deferential.").

It is not the job of the district court to re-weigh the evidence or review the factual record de novo. See Cox, 495 F.3d at 617; Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); McClees v. Shalala, 2 F.3d 301, 302 (8th Cir. 1993); Murphy v. Sullivan, 953 F.2d 383, 384 (8th Cir. 1992). Instead, the district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion. See Davis v. Apfel, 239 F.3d 962, 966 (8th Cir. 2001) (citing McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000)). Weighing the evidence is a function of the ALJ, who is the fact-finder. See Benskin v. Bowen, 830 F.2d 878, 882 (8th Cir. 1987). See also Onstead v. Sullivan, 962 F.2d 803, 804 (8th Cir. 1992) (holding that an ALJ's decision is conclusive upon a reviewing court if it is supported by "substantial evidence"). Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial

evidence may also support an opposite conclusion or because the reviewing court would have decided differently.  See Krogmeier, 294 F.3d at 1022.  See also Eichelberger,  390 F.3d at 589; Nevland v. Apfel, 204 F.3d 853, 857 (8th Cir. 2000) (quoting Terrell v. Apfel, 147 F.3d 659, 661 (8th Cir. 1998)); Hutsell v. Massanari, 259 F.3d 707, 711 (8th Cir. 2001).

To determine whether the Commissioner's final decision is supported by substantial evidence, the court is required to review the administrative record as a whole and to consider:

(1) Findings of credibility made by the ALJ;

(2) The education, background, work history, and age of the claimant;

(3) The medical evidence given by the claimant's treating physicians;

(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;

(5) The corroboration by third parties of the claimant's physical impairment;

(6) The testimony of vocational experts based upon proper hypothetical questions which fairly set forth the claimant's physical impairment; and

(7) The testimony of consulting physicians.

Brand v. Sec'y of Dep't of Health, Educ. & Welfare, 623 F.2d 523, 527 (8th Cir. 1980); Cruse v. Bowen, 867 F.2d 1183, 1184-85 (8th Cir. 1989).

Additionally, an ALJ's decision must comply "with the relevant legal requirements." Ford v. Astrue, 518 F.3d 979, 981 (8th Cir. 2008).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 416(i)(1)(A); 42 U.S.C. § 423(d)(1)(A).  "While the claimant has the burden of proving that the disability results from a medically determinable

physical or mental impairment, direct medical evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be produced." Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984).  When evaluating evidence of pain, the ALJ must consider:

> (1) the claimant's daily activities;
>
> (2) the subjective evidence of the duration, frequency, and intensity of the claimant's pain;
>
> (3) any precipitating or aggravating factors;
>
> (4) the dosage, effectiveness, and side effects of any medication; and
>
> (5) the claimant's functional restrictions.

Baker v. Sec'y of Health & Human Servs., 955 F.2d. 552, 555 (8th Cir. 1992); Polaski, 739 F.2d at 1322.

The absence of objective medical evidence is just one factor to be considered in evaluating the plaintiff's credibility.  Id.  The ALJ must also consider the plaintiff's prior work record, observations by third parties and treating and examining doctors, as well as the plaintiff's appearance and demeanor at the hearing.  See Polaski, 739 F.2d at 1322; Cruse, 867 F.2d at 1186.

The ALJ must make express credibility determinations and set forth the inconsistencies in the record which cause him or her to reject the plaintiff's complaints.  See Guilliams, 393 F.3d at 801; Masterson, 363 F.3d at 738; Lewis v. Barnhart, 353 F.3d 642, 647 (8th Cir. 2003); Hall v. Chater, 62 F.3d 220, 223 (8th Cir. 1995).  It is not enough that the record contains inconsistencies; the ALJ must specifically demonstrate that he or she considered all of the evidence.  Robinson v. Sullivan, 956 F.2d 836, 841 (8th Cir. 1992); Butler v. Sec'y of Health & Human Servs., 850 F.2d 425, 429 (8th Cir. 1988).  The ALJ, however, "need not explicitly

discuss each <u>Polaski</u> factor." <u>Strongson v. Barnhart</u>, 361 F.3d 1066, 1072 (8th Cir. 2004). <u>See</u> <u>also</u> <u>Steed</u>, 524 F.3d at 876 (citing <u>Lowe v. Apfel</u>, 226 F.3d 969, 972 (8th Cir. 2000)). The ALJ need only acknowledge and consider those factors. <u>See id.</u> Although credibility determinations are primarily for the ALJ and not the court, the ALJ's credibility assessment must be based on substantial evidence. <u>See Rautio v. Bowen</u>, 862 F.2d 176, 179 (8th Cir. 1988); <u>Millbrook v.</u> <u>Heckler</u>, 780 F.2d 1371, 1374 (8th Cir. 1985).

RFC is defined as what the claimant can do despite his or her limitations, 20 C.F.R. § 404.1545(a)(1), and includes an assessment of physical abilities and mental impairments. 20 C.F.R. § 404.1545(b)-(e). The Commissioner must show that a claimant who cannot perform his or her past relevant work can perform other work which exists in the national economy. <u>See</u> <u>Karlix v. Barnhart</u>, 457 F.3d 742, 746 (8th Cir. 2006); <u>Nevland</u>, 204 F.3d at 857 (citing <u>McCoy</u> <u>v. Schweiker</u>, 683 F.2d 1138, 1146-47 (8th Cir. 1982) (en banc)). The Commissioner must first prove that the claimant retains the RFC to perform other kinds of work. <u>See Goff</u>, 421 F.3d at 790; <u>Nevland</u>, 204 F.3d at 857. The Commissioner has to prove this by substantial evidence. <u>Warner v. Heckler</u>, 722 F.2d 428, 431 (8th Cir. 1983). Second, once the plaintiff's capabilities are established, the Commissioner has the burden of demonstrating that there are jobs available in the national economy that can realistically be performed by someone with the plaintiff's qualifications and capabilities. <u>See Goff</u>, 421 F.3d at 790; <u>Nevland</u>, 204 F.3d at 857.

To satisfy the Commissioner's burden, the testimony of a vocational expert (VE) may be used. An ALJ posing a hypothetical to a VE is not required to include all of a plaintiff's limitations, but only those which he finds credible. <u>See Goff</u>, 421 F.3d at 794 ("[T]he ALJ properly included only those limitations supported by the record as a whole in the hypothetical."); <u>Rautio</u>, 862 F.2d at 180. Use of the Medical-Vocational Guidelines is

appropriate if the ALJ discredits the plaintiff's subjective complaints of pain for legally sufficient reasons. See Baker v. Barnhart, 457 F.3d 882, 894-95 (8th Cir. 2006); Carlock v. Sullivan, 902 F.2d 1341, 1343 (8th Cir. 1990); Hutsell v. Sullivan, 892 F.2d 747, 750 (8th Cir. 1989).

## III.
## DISCUSSION

The issue before the court is whether substantial evidence supports the Commissioner's final determination that Plaintiff was not disabled. See Onstead, 962 F.2d at 804. Thus, even if there is substantial evidence that would support a decision opposite to that of the Commissioner, the court must affirm her decision as long as there is substantial evidence in favor of the Commissioner's position. See Cox, 495 F.3d at 617; Krogmeier, 294 F.3d at 1022.

At the hearing before the ALJ, Plaintiff testified that he had a GED and had taken some college courses; he no longer drank alcohol as a result of his being on medication; he could not work due to his inability to focus and concentrate, the effects of medication, and low energy; he sometimes was confused by simple instructions; and he heard voices, but they were reduced with medication. (Tr. 69-73, 76-79).

The ALJ found that Plaintiff met the insured status requirements through September 30, 2012; he had not engaged in substantial gainful activity since September 17, 2009; he had the severe impairments of bipolar disorder, personality disorder, and history of alcohol abuse/dependence; his impairments, including his substance abuse impairment, met Listing 12.09; and if Plaintiff stopped the substance abuse, he would not have an impairment or combination of impairments that met or medically equaled a listed impairment.[2] The ALJ

---

[2] The ALJ also stated that if Plaintiff "stopped the substance abuse, [his] remaining limitations would cause more than a minimal impact on [his] ability to perform basic work activities." The court notes, given the ALJ's subsequently stating that if Plaintiff stopped the substance abuse he

further found that if Plaintiff stopped the substance abuse he could perform the full range of work at all exertional levels but with the following non-exertional limitations: he could understand, remember, and carry out at least simple instructions and non-detailed tasks; he could not work in a setting that includes constant or regular contact with the general public; he could not perform work that includes more than infrequent handling of customer complaints; and he could not work in close proximity to alcohol or controlled substances.

Plaintiff contends that the ALJ's decision is not supported by substantial evidence because the ALJ failed to properly evaluate his substance abuse, RFC, and credibility. Plaintiff also contends that ALJ gave insufficient weight to the opinions of Lloyd Irwin Moore, Ph.D.; that the ALJ should have re-contacted Dr. Moore; and that the ALJ and the appeals counsel failed to give proper weight to the opinion of Portnip Chaowaratana, M.D. For the following reasons, the court finds that Plaintiff's arguments are without merit and that the ALJ's decision is supported by substantial evidence.

**A.      Plaintiff's Credibility:**

The court will first consider the ALJ's credibility determination, as the ALJ's evaluation of Plaintiff's credibility was essential to the ALJ's determination of other issues, including the severity of Plaintiff's impairments. See Myers v. Colvin, 721 F.3d 521, 527-28 (8th Cir. 2013) (finding no error where ALJ phrased the credibility determination in terms of the RFC determination where he provided thorough analysis of the credibility issue that relied on more than the absence of objective medical evidence); Wildman v. Astrue, 596 F.3d 959, 969 (8th Cir.

---

would not have an impairment of combination of impairments which medically equaled a listed impairment, that the ALJ's first statement is a scrivener's error. Hepp v. Astrue, 511 F.3d 798, 806 (8th Cir. 2008); Senne v. Apfel, 198 F.3d 1065, 1067 (8th Cir. 1999) ("We have consistently held that a deficiency in opinion-writing is not a sufficient reason for setting aside an administrative finding where the deficiency had no practical effect on the outcome of the case.").

2010) ("[The plaintiff] fails to recognize that the ALJ's determination regarding her RFC was influenced by his determination that her allegations were not credible.") (citing Tellez v. Barnhart, 403 F.3d 953, 957 (8th Cir. 2005)); 20 C.F.R. §§ 404.1545, 416.945 (2010).  As set forth more fully above, the ALJ's credibility findings should be affirmed if they are supported by substantial evidence on the record as a whole; a court cannot substitute its judgment for that of the ALJ.  See Renstrom v. Astrue, 680 F.3d 1057, 1066 (8th Cir. 2012) ("If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, we will normally defer to the ALJ's credibility determination.") (quoting Juszczyk v. Astrue, 542 F.3d 626, 632 (8th Cir.2008)); Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Hutsell, 892 F.2d at 750.  To the extent that the ALJ did not specifically cite Polaski, other case law, and/or Regulations relevant to a consideration of Plaintiff's credibility, this is not necessarily a basis to set aside an ALJ's decision where the decision is supported by substantial evidence.  See Randolph v. Barnhart, 386 F.3d 835, 842 (8th Cir. 2004); Wheeler v. Apfel, 224 F.3d 891, 895 n.3 (8th Cir. 2000); Reynolds v. Chater, 82 F.3d 254, 258 (8th Cir. 1996); Montgomery v. Chater, 69 F.3d 273, 275 (8th Cir. 1995).

Additionally, an ALJ need not methodically discuss each Polaski factor if the factors are acknowledged and examined prior to making a credibility determination; where adequately explained and supported, credibility findings are for the ALJ to make.  See Partee v. Astrue, 638 F.3d 860, 865 (8th Cir. 2011) ("The ALJ is not required to discuss methodically each Polaski consideration, so long as he acknowledged and examined those considerations before discounting a claimant's subjective complaints."); Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000).  See also Tucker v. Barnhart, 363 F.3d 781, 783 (8th Cir. 2004) ("The ALJ is not required to discuss each Polaski factor as long as the analytical framework is recognized and

considered."); Strongson, 361 F.3d at 1072; Brown v. Chater, 87 F.3d 963, 966 (8th Cir. 1996). In any case, "[t]he credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." Pearsall v. Massanari, 274 F.3d 1211, 1218 (8th Cir. 2001). "If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, [a court] will normally defer to the ALJ's credibility determination." Gregg v. Barnhart, 354 F.3d 710, 714 (8th Cir. 2003). See also Halverson v. Astrue, 600 F.3d 922, 932 (8th Cir. 2010); Cox v. Barnhart, 471 F.3d 902, 907 (8th Cir. 2006).

The ALJ in the matter under consideration found Plaintiff was credible as it related to the level of his impairment, but found Plaintiff was not credible insofar as he claimed that alcohol abuse did not play a significant role in his limitations. (Tr. 49). For the following reasons, the court finds that the reasons offered by the ALJ in support of his credibility determination are based on substantial evidence.

First, the ALJ found that Plaintiff's testimony regarding his use of alcohol was inconsistent with other evidence of record. (Tr. 49). An ALJ may find a claimant's testimony regarding his alcohol consumption not credible, where such testimony conflicts with medical documentation. See Karlix v. Barnhart, 457 F.3d 742, 748 (8th Cir. 2006) ("[T]he ALJ found Karlix unreliable because his testimony at the administrative hearing regarding his consumption of alcohol conflicted with medical documentation. This was a sufficient reason for discrediting Karlix, and we defer to the ALJ's judgment on this issue."). Indeed, Plaintiff testified that he never had a drinking problem. He said he "ain't never drank heavy. I've been drunk before, but I ain't never had no problems." Plaintiff also testified that, in 2009, when he was "drinking at least five mixed drinks a day," it was not a problem. When asked if he was still drinking,

Plaintiff testified that he was on medication and could not drink. He could not recall when he last had a drink. (Tr. 72-73).

Nonetheless, on November 11, 2009, after Plaintiff had been admitted to the hospital, Shadid Badar, M.D., reported that Plaintiff's problems included alcohol abuse, and treatment recommendations included that Plaintiff start "alcohol detox." (Tr. 301). Plaintiff was also diagnosed with alcohol dependence, alcoholism, or alcohol abuse, on October 14 (Tr. 320), November 13 (Tr. 304), November 19 (Tr. 295), December 14 (Tr. 294), and December 26, 2009 (Tr. 298), and in October 2011 (Tr. 448). It was also reported, in 2009, that alcohol was interfering with Plaintiff's work performance, that he had lost three jobs in the last few years due to this problem, and that he should attend an alcoholism treatment program. (Tr. 319).

Second, the ALJ considered that there was evidence that Plaintiff may have been malingering. (Tr. 55). See Jones v. Callahan, 122 F.3d 1148, 1152 (8th Cir. 1997) (ALJ properly considered that claimant exaggerated his symptoms when finding him not credible). March and April 24, 2011 progress notes reflect that Plaintiff was diagnosed with schizophrenia and that malingering should be ruled out. (Tr. 409, 411).

Third, the ALJ considered that, during the period Plaintiff claimed he was disabled, Plaintiff indicated he was searching for work and applied for unemployment benefits. (Tr. 53-54). "Acts which are inconsistent with a claimant's assertion of disability reflect negatively upon that claimant's credibility." Johnson v. Apfel, 240 F.3d 1145, 1148 (8th Cir. 2001). Additionally, a claimant who applies for unemployment compensation benefits holds himself out as available, willing, and able to work. See Jernigan v. Sullivan, 948 F.2d 1070, 1074 (8th Cir. 1991) (finding claimant's application for unemployment benefits adversely affected his credibility; "A claimant may admit an ability to work by applying for unemployment

compensation benefits because such an applicant must hold himself out as available, willing and able to work.").

Fourth, the ALJ considered inconsistencies regarding Plaintiff's testimony as to why he lost his last job. (Tr. 54). Although Plaintiff testified that he lost his last job due to medication side effects, including muscle spasms (Tr. 76), he reported to medical sources that he drank at least five drinks a day and lost his job, in September 2009, because he had problems with his behavior (Tr. 297), and that his being fired was related to his drinking problem (Tr. 319).

Fifth, the record reflects that Plaintiff was non-complaint with taking medication. (Tr. 297, 369, 375, 377, 388). See Eichelberger, 390 F.3d at 589 (holding that the ALJ properly considered that the plaintiff cancelled several physical therapy appointments and that no physician imposed any work-related restrictions on her) (citing Brown v. Chater, 87 F.3d 963, 965 (8th Cir. 1996) (claimant's failure to comply with prescribed medical treatment and lack of significant medical restrictions is inconsistent with complaints of disabling pain). See also Wildman v. Astrue, 596 F.3d 959, 968-69 (8th Cir. 2010) (it is permissible for ALJ to consider claimant's non-compliance with prescribed medical treatment).

Sixth, the ALJ considered the testimony of Plaintiff's girlfriend but noted that her testimony could be affected by her having a financial interest in Plaintiff's obtaining benefits, given that she is the father of Plaintiff's child. Indeed, an ALJ may discount the testimony of a witness because she has a financial stake in the outcome of the claimant's case. See Choate v. Barnhart, 457 F.3d, 865, 872 (8th Cir. 2006).

Seventh, in addition to the testimony of Plaintiff's girlfriend, the ALJ considered the a report provided by Plaintiff's mother, and, upon determining that controlling weight should not be given to their testimony and/or reporting, the ALJ considered that their testimony and/or

reporting was not consistent with the preponderance of evidence, including Plaintiff's medical records. The ALJ also noted Plaintiff's mother was not an acceptable medical source. An ALJ may discount corroborating testimony on the same basis used to discredit a claimant's testimony. See Black v. Apfel, 143 F.3d 383, 387 (8th Cir. 2006). Thus, where the same evidence that the ALJ relied upon when discrediting Plaintiff's testimony would have been the same evidence which would have supported discrediting the testimony of Plaintiff's girlfriend and reporting of his mother, the ALJ's doing so is "inconsequential." Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000). See also Reynolds v. Chater, 82 F.3d 254, 258 (8th Cir. 1996) (holding that an ALJ's decision need not be reversed where he failed to consider testimony which would not have had an effect on the outcome of the case).

B.      **Plaintiff's Alcoholism:**

In 1996, Congress eliminated alcoholism or drug addiction as a basis for obtaining social security benefits. See Kluesner v. Astrue, 607 F.3d 533, 537 (8th Cir. 2010). "An individual shall not be considered disabled for purposes of this title if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 1382c(a)(3)(J). See also Brueggemann, 348 F.3d at 692 n.1, 693-95 (quoting 42 U.S.C. § 423(d)(2)(C)). The Regulations set out a two-step process in cases involving evidence of substance abuse. First, the ALJ must determine if the claimant symptoms, regardless of cause, constitute a disability. Kluesner, 607 F.3d at 537; 20 C.F.R. § 416.935(a). If the ALJ finds a disability and evidence of substance abuse, the next step is to determine whether the disability would exist in the absence of the substance abuse. Kluesner, 607 F.3d at 537. As such, the ALJ's finding of disability "is, in effect, a condition precedent" to applying the special rule on alcoholism and drug addiction." Frank S. Bloch, Bloch on Social

Security § 3.39 (2003) (cited approvingly in <u>Brueggemann v. Barnhart</u>, 348 F.3d 689, 693 (8th Cir. 2003)). <u>See also</u> <u>Fastner v. Barnhart</u>, 324 F.3d 981, 986 (8th Cir. 2003) ("Generally, a determination under . . . § 416.935(b) is only necessary if the ALJ has found that the sum of that individual's impairments would otherwise amount to a finding of disability.").

"An individual is not considered to be disabled ... if alcoholism or drug addiction would ... be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C). "[T]he relevant inquiry is 'whether [the Commissioner] would still find [a claimant] disabled if [he] stopped using drugs or alcohol.'" <u>Estes v. Barnhart</u>, 275 F.3d 722, 725 (8th Cir. 2002) (quoting 20 C.F.R. § 404.1535 (disability) and 20 C.F.R. § 416.935 (SSI)). The key factor in determining whether a claimant who suffers from alcoholism or drug use is disabled is whether the claimant would still be found disabled if the claimant stopped using drugs or alcohol. <u>Id.</u> at 724-25 (8th Cir. 2002) (finding ALJ properly denied benefits where there was a clear interrelation between claimant's alleged disabilities and his alcohol abuse); <u>Rehder v. Barnhart</u>, 205 F.3d 1056, 1059 (8th Cir. 2000); <u>Jackson v. Apfel</u>, 162 F.3d 533, 537 (8th Cir. 1998) (because claimant's depression was linked to chemical dependence and because it was not a severe impairment when combined with alcohol abuse, the plaintiff was not disabled).

In <u>Brueggeman</u>, 348 F.3d at 693-95, the court held:

> Since certain 1996 amendments to the Social Security Act, if alcohol or drug abuse comprises a contributing factor material to the determination of disability, the claimant's application must be denied. 42 U.S.C. § 423(d)(2)(C); 20 C.F.R § 404.1535. The burden of proving that alcoholism was not a contributing factor material to the disability determination falls on Brueggemann. <u>Estes v. Barnhart</u>, 275 F.3d 722, 725 (8th Cir. 2002), citing <u>Mittlestedt v. Apfel</u>, 204 F.3d 847, 852 (8th Cir. 2000). However, the ALJ retains the responsibility of developing a full and fair record in the non-adversarial administrative proceeding. <u>Hildebrand</u>, 302 F.3d at 838.

...

The plain text of the relevant regulation requires the ALJ first to determine whether [the claimant] is disabled. 20 C.F.R. § 404.1535(a) ("*If we find that you are disabled* and have medical evidence of your drug addiction or alcoholism, we must determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability." (emphasis added)). The ALJ must reach this determination initially, as the ALJ did in <u>Fastner v. Barnhart</u>, 324 F.3d 981, 986 (8th Cir. 2003), using the standard five-step approach described in 20 C.F.R. § 404.1520 without segregating out any effects that might be due to substance use disorders. <u>Ball v. Massanari</u>, 254 F.3d 817, 821 (9th Cir. 2001). The ALJ must base this disability determination on substantial evidence of [the claimant's] medical limitations without deductions for the assumed effects of substance use disorders. The inquiry here concerns strictly symptoms, not causes, and the rules for how to weigh evidence of symptoms remain well established. Substance use disorders are simply not among the evidentiary factors our precedents and the regulations identify as probative when an ALJ evaluates a physician's expert opinion in the initial determination of the claimant's disability. <u>See</u> 20 C.F.R. § 404.1527.

If the gross total of a claimant's limitations, including the effects of substance use disorders, suffices to show disability, then the ALJ must next consider which limitations would remain when the effects of the substance use disorders are absent. <u>Pettit v. Apfel</u>, 218 F.3d 901, 903 (8th Cir. 2000); 20 C.F.R. § 404.1535(b)(2). We have previously noted that when the claimant is actively abusing alcohol or drugs, this determination will necessarily be hypothetical and therefore more difficult than the same task when the claimant has stopped. <u>Pettit</u>, 218 F.3d at 903. Even though the task is difficult, the ALJ must develop a full and fair record and support his conclusion with substantial evidence on this point just as he would on any other.

Only after the ALJ has made an initial determination 1) that [the claimant] is disabled, 2) that drug or alcohol use is a concern, and 3) that substantial evidence on the record shows what limitations would remain in the absence of alcoholism or drug addiction, may he then reach a conclusion on whether [the claimant's] substance use disorders are a contributing factor material to the determination of disability. If this process proves indeterminate, an award of benefits must follow.

Noting the plaintiff's in-patient hospitalization on several occasions when the record reflected his sobriety, the court in <u>Brueggemann</u>, 348 F.3d at 695, concluded that the evidence suggested the claimant's disability "independent of any alcohol abuse carrie[d] multiple indicia of reliability."

Consistent with the regulations and case law, ALJ in the matter under consideration first determined that Plaintiff's claimant symptoms, regardless of cause, constituted a disability. See Kluesner, 607 F.3d at 537; Brueggeman, 348 F.3d at 692-95; 20 C.F.R. § 416.935(a). Pursuant to the required two-part inquiry, the ALJ then considered whether Plaintiff's disability would exist in the absence of his alcohol abuse. See Kluesner, 607 F.3d at 537. In this regard, the ALJ considered the numerous references in the record to Plaintiff's alcohol abuse. Particularly, in October 2008, Plaintiff reported a six-year history of drinking. (Tr. 323). In November 2008, although he reported that he had cut back on his alcohol use, he continued to drink daily. (Tr. 322). Notably, in October 2009, Plaintiff was still drinking "excessively" and reported that alcohol had been interfering with his performance at work and that he lost his last three jobs due to alcohol use and absenteeism. (Tr. 319).

The ALJ also considered that Plaintiff was admitted to CenterPointe Hospital, on November 9, 2009, after he "apparently made threats to harm his fiancé, their children, and himself. During Plaintiff's initial assessment, he refused to speak and appeared to be responding to internal stimuli. (Tr. 369). The justification for Plaintiff's admission was the possibility of harm to himself and others. (Tr. 373). Plaintiff reported that he had not been compliant with taking his medication. (Tr. 369, 375, 377). He also reported drinking alcohol every day for the past several years; that he drank "at least five drinks daily"; and that his longest period of sobriety was when he was incarcerated for a year. (Tr. 377). While in the hospital, Plaintiff was started on "alcohol detox," had "suicidal precautions," and was placed on medications to stabilize his mood. (Tr. 382-83). As considered by the ALJ, upon discharge, on November 13, 2009, Plaintiff had no suicidal ideation, denied agitation or irritability, his mood had stabilized, and he denied any depression or anxiety. (Tr. 54, 384). Although Plaintiff's Global Assessment

of Functioning (GAF) was 20, on admission, it was 50 on discharge, which is in the "serious," but borderline "moderate" range.[3] (Tr. 379, 387).

As considered by the ALJ, Plaintiff then was admitted for acute outpatient mental health treatment at CenterPointe Hospital, from November 17, 2009, to December 8, 2009. Upon admission, Plaintiff acknowledged that he had been drinking. (Tr. 385). Upon discharge, Plaintiff was stable and denied suicidal intention. It was noted that Plaintiff's GAF had been 35 on admission, was 50 on discharge, and had been as high as 60 in the prior 12 months; a GAF of 60 is in the "moderate" and borderline "mild" range. (Tr. 387). February 2010 treatment notes reflect that Plaintiff reported drinking twice the previous month. (Tr. 417).

---

[3] Global assessment of functioning ("GAF") is the clinician's judgment of the individual's overall level of functioning, not including impairments due to physical or environmental limitations. See Diagnostic and Statistical Manual of Mental Disorders, DSM-IV, 30-32 (4th ed. 1994). Expressed in terms of degree of severity of symptoms or functional impairment, GAF scores of 31 to 40 represent "some impairment in reality testing or communication or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood," 41 to 50 represents "serious," scores of 51 to 60 represent "moderate," scores of 61 to 70 represent "mild," and scores of 90 or higher represent absent or minimal symptoms of impairment. Id. at 32. See also Brown v. Astrue, 611 F.3d 941, 955 (8th Cir. 2010) ("[A] GAF score of 65 [or 70] ... reflects 'some mild symptoms (e.g. depressed mood or mild insomnia) OR some difficulty in social, occupational, or school functioning ... but generally functioning pretty well, has some meaningful interpersonal relationships.'") (quoting Kohler v. Astrue, 546 F.3d 260, 263 (2d Cir. 2008) (quoting Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 2000) (alterations in original). See also Goff, 421 F.3d at 791, 793 (affirming where court held GAF of 58 was inconsistent with doctor's opinion that claimant suffered from extreme limitations; GAF scores of 58-60 supported ALJ's limitation to simple, routine, repetitive work).

Although "the Commissioner has declined to endorse the GAF scale for 'use in the Social Security and SSI disability programs,' ... GAF scores may still be used to assist the ALJ in assessing the level of a claimant's functioning." Halverson v. Astrue, 600 F.3d 922, 930-31 (8th Cir. 2010) (quoting 65 Fed. Reg. 50746, 50764-65, 2000 WL 1173632 (Aug. 21, 2000), and citing Howard v. Comm'r of Soc. Sec., 276 F.3d 235, 241 (6th Cir. 2002) ("While a GAF score may be of considerable help to the ALJ in formulating the [residual functional capacity], it is not essential to the RFC's accuracy.")).

From June 2 to June 7, 2010, Plaintiff was again admitted to an outpatient program at CenterPointe Hospital. Upon admission, Plaintiff appeared to be responding to internal stimuli. He was recommended for inpatient treatment. (Tr. 388).

When he was admitted for inpatient treatment, on June 14, 2010, due to persistent delusional thoughts and the appearance of responding to internal stimuli, Plaintiff's GAF was 20; he was placed on suicide and assault precautions; and he received individual and group therapy, medication evaluation and management, and medical and dietary consultation. On June 15, 2010, Plaintiff reported that he drank "alcohol off and on." (Tr. 364-65). Upon discharge, on June 19, 2010, Plaintiff denied suicidal and homicidal ideations and auditory and visual hallucinations, and his GAF was 50. The discharge plan included follow-up in an intensive outpatient program and with Azfar Malik, M.D. (Tr. 397-98).

Plaintiff continued mental health treatment from January through July 2011. As discussed above in regard to Plaintiff's credibility, it was during this period Plaintiff was diagnosed with "schizophrenia rule out malingering." (Tr. 409, 411). Treatment notes from this period are generally not legible, although records reflect that Plaintiff made poor eye contact and had a flat affect. He also reported that he was "doing fairly well." (Tr. 407, 411). In March 2011, the mental health provider noted that Plaintiff was "attention seeking" and was tying "hard to be dramatic," and that there was no evidence of hallucinations. (Tr. 409). May 2011 notes reflect that, although Plaintiff was diagnosed with depression, *there were no positive symptoms of psychosis or mania*. (Tr. 407).

Noting that the State agency medical consultant, Dr. Kresheck, did not examine Plaintiff, the ALJ considered her findings, based on her review of the records. (Tr. 50). Dr. Kresheck reported that Plaintiff was not significantly limited in regard to remembering locations and work-

like procedures, understanding and remembering very short and simple instructions, carrying out very short and simple instructions, sustaining an ordinary routine without special supervision, making simple work-related decisions, interacting appropriately with the general public, asking simple questions or requesting assistance, and being aware of normal hazards and taking appropriate precautions. Specifically, Dr. Kresheck opined that "[i]n absence of DAA and compliant w/prescribed meds, [Plaintiff] retain[ed] the ability to understand, remember and complete at least 1-2 step instructions w/limited social contact." (Tr. 340). As suggested by Defendant, Dr. Kresheck was the only medical source who limited her analysis of evidence to exclude the effects of alcohol use. (Doc. 19 at 6). Indeed, the ALJ considered that no treating or examining physician or psychiatrist considered the effects of Plaintiff's "substance use with regard to his limitations." (Tr. 50). Under such circumstances, the court finds that the ALJ gave proper weight to Dr. Kresheck's opinion. As for Plaintiff's argument that the ALJ should have sought clarification from Dr. Kresheck "in light of the evidence of numerous negative drug tests" (Doc. 16 at 14), the court fails to see the relevance of drug testing; Plaintiff's substance abuse involved primarily alcohol, not drugs. Further, the court finds that the ALJ was not required to re-contact Dr. Kresheck and that he gave proper weight to Dr. Kresheck's opinion.

The ALJ also considered the report of consultive examiner Lloyd Moore, Ph.D. Dr. Moore examined Plaintiff on October 3, 2011, for purposes of the determination of possible disability. Dr. Moore reported that Plaintiff was "vague in certain phases of the interview, especially with respect to substance and alcohol use." (Tr. 446). He also reported that Plaintiff presented himself in a clean and casual manner; his thought processes and memory were intact; he denied homicidal ideations; he was oriented to person, place, and time; his judgment was poor; and his psychological insight was "fair at best." (Tr. 447). Dr. Moore concluded that

Plaintiff was difficult to interview due to a lack of interaction. After Dr. Moore informed Plaintiff that the interview could not be conducted without his interacting with Dr. Moore, Plaintiff responded to Dr. Moore "but he was not spontaneous in his responses." Dr. Moore noted Plaintiff had a history of alcohol and opioid use, and that Plaintiff said he had not consumed alcohol for two or three years. Dr. Moore diagnosed Plaintiff with schizoaffective disorder, alcohol abuse, "in unknown remission," and opioid abuse, "in unknown remission." He also diagnosed personality disorder, not otherwise specified, with antisocial traits, and a GAF of 50, and found Plaintiff had marked impairments in activities of daily living, social functioning, and concentration, persistence and pace.

Upon concluding that little weight should be given to Dr. Moore's opinion, the ALJ noted that Dr. Moore indicated that Plaintiff was difficult or non-cooperative during the interview. Further, the ALJ noted that Dr. Moore saw Plaintiff only on one occasion; he was not a treating doctor. See Chamberlain, 47 F.3d at 1494 ("Medical reports of a treating physician are ordinarily entitled to greater weight than the opinion of a consulting physician."). Moreover, much of Dr. Moore's report is based on Plaintiff's recitation of his medical history, symptoms, and subjective complaints in a clinical interview, as well as information from Plaintiff's friend. In fact, Dr. Moore reported that his "diagnosis [was] made without benefit of medical records." (Tr. 444, 447). See Renstrom v. Astrue, 680 F.3d 1057, 1064-65 (8th Cir. 2012) (affirming where ALJ did not give controlling weight to opinion of treating doctor, where doctor's opinion was "largely based on [claimant's] subjective complaints); Kirby v. Astrue, 500 F.3d 705, 709 (8th Cir. 2007) (holding that the ALJ was entitled to give less weight to the opinion of a treating doctor where the doctor's opinion was based largely on the plaintiff's subjective complaints rather than on objective medical evidence) (citing Vandenboom v. Barnhart, 421 F.3d 745, 749

(8th Cir. 2005)).  To the extent Plaintiff suggests the ALJ should have re-contacted Dr. Moore regarding Plaintiff's opioid use, as discussed above in regard to the Dr. Kresheck, Plaintiff's substance abuse involved primarily alcohol, not drugs.  In conclusion, the court finds that the ALJ was not required to re-contact Dr. Moore and that the weight given to Dr. Moore's opinion is based on substantial evidence and is consistent with the regulations and case law.

Plaintiff argues the ALJ did not give proper weight to the opinion of Dr. Malik in a letter, dated June 18, 2010, in which Dr. Malik stated that Plaintiff was then being treated for chronic paranoid schizophrenia; he was hospitalized on an inpatient unit, under Dr. Malik's care; he would remain hospitalized until he was stable; Plaintiff's symptoms included persistent delusional thoughts, paranoia, and auditory and visual hallucinations; his symptoms were chronic; and Plaintiff's chronic symptoms made "it difficult for him to maintain any type of stable employment."  (Tr. 361).  Upon finding that Dr. Malik's opinion should not be given controlling weight the ALJ considered that Dr. Malik did not take into account the effects of Plaintiff's alcohol use on his symptoms, see 42 U.S.C. § 1382c(a)(3)(J); at the time Dr. Malik rendered his opinion, Plaintiff was in the middle of a brief hospitalization, see 20 C.F.R. § 414.909 ("Unless your impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months.  We call this the duration requirement."); prior to Plaintiff's hospitalization, he had been non-compliant with taking his medications, see Brown, 87 F.3d at 965; and, after Plaintiff's hospitalization, he was stabilized and had improved.  The court finds that the weight given to Dr. Malik's opinion by the ALJ is based on substantial evidence and that the ALJ's decision, in this regard, is consistent with the regulations and case law.

Plaintiff contends that the ALJ did not give proper weight to the opinion of Porntip Chaowaratana, M.D., on an April 2010 Medical Source Statement checklist form indicating that Plaintiff could not perform sedentary or light work and that he had "moderately severe" limitations in regard to his ability to maintain attention and concentration for extended period; to perform activities within a schedule; to maintain regular attendance; to be punctual within customary tolerances; to complete a normal workday and workweek without interruptions from medically-based symptoms; and to perform at a consistent pace without an unreasonable number and length of rest periods. (Tr. 358). Plaintiff also contends the ALJ gave insufficient weight to Dr. Chaowaratana's opinion as expressed in a July 2011 Medical Source Statement Concerning the Nature and Severity of an Individual's Physical Impairment, in which Dr. Chaowaratana opined that Plaintiff could not perform light or sedentary work, even when he had the freedom to alternate sitting and standing. Dr. Chaowaratana also opined that Plaintiff had severe non-exertional limitations in regard to his ability to maintain attention and concentration, activities within a schedule, and complete a normal workday and workweek. (Tr. 441-42).

Upon determining that controlling weight should not be given to Dr. Chaowaratana opinions, both in April 2010 and July 2011, the ALJ noted that Dr. Chaowaratana offered no explanation for any of the responses given on the forms, see Ward v. Heckler, 786 F.2d 844, 846 (8th Cir. 1986) (per curiam) ("Even statements made by a claimant's treating physician regarding the existence of a disability have been held to be properly discounted in favor of the contrary medical opinion of a consulting physician where the treating physician's statements were conclusory in nature."), and that there was no medical evidence indicating that Plaintiff had any significant physical impairments that would limit his ability to perform even light work, see Wildman v. Astrue, 596 F.3d 959, 964 (8th Cir. 2010) ("A treating physician's opinion deserves no greater respect than any other physician's opinion when [it] consists of nothing more than vague, conclusory

statements.") (quoting <u>Piepgras v. Chater</u>, 76 F.3d 233, 236 (8th Cir. 1996)); <u>Leckenby v. Astrue</u>, 487 F.3d 626, 632 (8th Cir. 2007) (treating physician's opinion does not automatically control or obviate the need to evaluate the record as whole; upholding the ALJ's decision to discount treating physician's medical-source statement where limitations were never mentioned in numerous treatment records or supported by any explanation). The ALJ also considered that Dr. Chaowaratana did not take into account Plaintiff's possible malingering, as indicated in Plaintiff's treatment notes, and that Dr. Chaowaratana did not account for Plaintiff's issues with alcohol abuse, <u>see</u> 42 U.S.C. § 1382c(a)(3)(J). In conclusion, the court finds that the ALJ's consideration of Dr. Chaowaratana's opinion is based on substantial evidence and that it is consistent with the regulations and case law.

Plaintiff also argues that the Appeals Council failed to properly consider a February 8, 2012 letter from Dr. Chaowaratana. In this letter which Plaintiff submitted to the Appeals Council, Dr. Chaowaratana stated that Plaintiff had been his patient since 2006; he referred Plaintiff to a psychiatric physician, Dr. Haskin; Dr. Haskin referred Plaintiff to Psych Care Consultants, where Plaintiff was placed under the care of Dr. Malik, and a mental health practitioner who worked under Dr. Malik's direction; and after several visits with Dr. Malik and the practitioner, Plaintiff was diagnosed with schizoaffective disorder. Dr. Chaowaratana further stated that, while Plaintiff was hospitalized at CenterPointe Hospital, he had lab tests, and that he had "not seen any results or recommendations of detox for [Plaintiff] due [to] substance abuse. The results [of Plaintiff's lab tests] and medical records that [Dr. Chaowaratana] [had] reviewed show[ed] that [Plaintiff] [was] on his medication and taking his medication to maintain some form of balanced day to day." Dr. Chaowaratana further stated that, "[b]ased on my professional

medical expertise [Plaintiff] is disabled.  He must continue on-going treatment on his medication regime in order for him to function at least partially day-to-day."  (Tr. 29-30).

The Appeals Council will consider new and material evidence where it relates to the period on or before the date of the ALJ hearing decision. 20 C.F.R. § 404.970(b).  New and material evidence submitted to the Appeals Council which relates to the period before the date of the ALJ's decision becomes part of the administrative record.  Myers v. Colvin, 721 F.3d 521, 526 (8th Cir. 2013) (application for disability benefits remains in effect only until the issuance of "hearing decision" on that application, so evidence submitted to appeals council cannot affect the validity of the ALJ's determination if evidence is of treatment claimant received after issuance of ALJ's opinion); Davidson v. Astrue, 501 F.3d 987, 990 (8th Cir. 2007); Cunningham v. Apfel, 222 F.3d 496, 500 (8th Cir. 2000).  To be material, the evidence must be "non-cumulative, relevant, and probative of the claimant's condition for the time period for which benefits were denied" and must not concern "subsequent deterioration of a previously non-disabling condition." Jones v. Callahan, 122 F.3d 1148, 1154 (8th Cir. 1997).  See also Rehder v. Apfel, 205 F.3d 1056, 1061 (8th Cir. 2000).

Once it is clear that the Appeals Counsel has considered newly submitted evidence, the role of the court is limited to deciding whether the ALJ's determination is supported by substantial evidence on the record as a whole, including new evidence submitted after the determination was made.  See Stephens v. Shalala, 50 F.3d 538, 541 (8th Cir. 1995) ("Material new evidence considered by the Appeals Council will be viewed with the record as a whole, whereas new evidence not considered by the Appeals Council will be considered by the reviewing court only upon a showing of materiality and good cause for not incorporating it in the

earlier proceedings."; on review, the court will consider the additional evidence as part of the record, "but only to the extent [the claimant] can independently satisfy us as to its materiality.").

First, to the extent Dr. Chaowaratana opined regarding Plaintiff's non-exertional limitations and to the extent he opined that Plaintiff was disabled, Dr. Chaowaratana acknowledged that he referred Plaintiff to others for treatment for his mental conditions. Second, Dr. Chaowaratana gave no explanation of why Plaintiff is unable to perform light work. As noted by the ALJ, Dr. Chaowaratana's treatment notes do not reflect such limitations. Notably, his notes reflect Plaintiff's problems with sleeping, mental problems, and mood, and that Plaintiff had continued mental health treatment. (Tr. 350-54). Third, Dr. Chaowaratana did not account for Plaintiff's alcoholism. Fourth, although Dr. Chaowaratana opined that Plaintiff was disabled, such an opinion invades the province of the Commissioner. Renstrom v. Astrue, 680 F.3d 1057, 1065 (8th Cir. 2012) (ALJ need not defer to treating doctor's opinion that claimant is totally disabled "because it invades the province of the Commissioner to make the ultimate disability determination"). Thus, the court finds that the Appeals Council properly denied Plaintiff's request for review based on the newly submitted evidence.

In conclusion, the court finds that the ALJ gave proper weight to all medical opinions and evidence of record; that the ALJ's consideration of the medical opinions and records is based on substantial evidence; that the ALJ properly complied with the regulations and case law when considering Plaintiff's alcoholism; and that the ALJ's decision, in this regard, is based on substantial evidence on the record as a whole, including the additional evidence Plaintiff submitted to the Appeals Council.

**C.    Plaintiff's RFC:**

The Regulations define RFC as "what [the claimant] can do" despite his or her "physical or mental limitations."  20 C.F.R. § 404.1545(a).  "When determining whether a claimant can engage in substantial employment, an ALJ must consider the combination of the claimant's mental and physical impairments."  Lauer v. Apfel, 245 F.3d 700, 703 (8th Cir. 2001).  "The ALJ must assess a claimant's RFC based on all relevant, credible evidence in the record, 'including the medical records, observations of treating physicians and others, and an individual's own description of his limitations.'"  Tucker v. Barnhart, 363 F.3d 781, 783 (8th Cir. 2004) (quoting McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000)).  See also Myers v. Colvin, 721 F.3d 521, 526 (8th Cir. 2013).

To determine a claimant's RFC, the ALJ must move, analytically, from ascertaining the true extent of the claimant's impairments to determining the kind of work the claimant can still do despite his or her impairments.  Although assessing a claimant's RFC is primarily the responsibility of the ALJ, a "'claimant's residual functional capacity is a medical question.'" Lauer, 245 F.3d at 704 (quoting Singh v. Apfel, 222 F.3d 448, 451 (8th Cir. 2000)).  The Eighth Circuit clarified, in Lauer, 245 F.3d at 704, that "'[s]ome medical evidence,' Dykes v. Apfel, 223 F.3d 865, 867 (8th Cir. 2000) (per curiam), must support the determination of the claimant's RFC, and the ALJ should obtain medical evidence that addresses the claimant's 'ability to function in the workplace,' Nevland v. Apfel, 204 F.3d 853, 858 (8th Cir. 2000)."  Thus, an ALJ is "required to consider at least some supporting evidence from a professional."  Id.  See also Vossen v. Astrue, 612 F.3d 1011, 1016 (8th Cir. 2010) ("The ALJ bears the primary responsibility for determining a claimant's RFC and because RFC is a medical question, some

medical evidence must support the determination of the claimant's RFC."); <u>Eichelberger</u>, 390 F.3d at 591.

RFC is "an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities." Social Security Ruling (SSR) 96-8p, 1996 WL 374184, at *2 (July 2, 1996). Additionally, "RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis." <u>Id.</u>

Moreover, "[i]t is incorrect to find that an individual has limitations or restrictions beyond those caused by his or her medical impairment(s) including any related symptoms, such as pain." <u>Id.</u> "RFC is an issue only at steps 4 and 5 of the sequential evaluation process." <u>Id.</u> at *3. As stated above, at step 4 the claimant has the burden of persuasion to demonstrate his or her RFC. <u>Stormo v. Barnhart</u>, 377 F.3d 801, 806 (8th Cir. 2004). "If a claimant establishes [his or] her inability to do past relevant work, then the burden of proof shifts to the Commissioner." <u>Goff</u>, 421 F.3d at 790 (citing <u>Eichelberger</u>, 390 F.3d at 591). In contrast to the first four steps of the sequential evaluation where the claimant carries the burden of proof, the Commissioner has the burden of production at step 5. <u>Charles v. Barnhart</u>, 375 F.3d 777, 782 n.5 (8th Cir. 2004). Even so, at step 5, "[t]he burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner." <u>Goff</u>, 421 F.3d at 790. Also, at step 5, where a claimant's RFC is expressed in terms of exertional categories, it must be determined whether the claimant can do the full range of work at a given exertional level. The claimant must be able to "perform substantially all of the exertional and nonexertional

functions required in work at that level. Therefore, it is necessary to assess the individual's capacity to perform each of these functions in order to decide which exertional level is appropriate and whether the individual is capable of doing the full range of work contemplated by the exertional level." Id. In any case, "[a] disability claimant has the burden to establish [his] RFC." Eichelberger, 390 F.3d at 591 (citing Masterson, 363 F.3d at 737). See also Vossen, 612 F.3d at 1016.

Upon making an RFC assessment, an ALJ must first identify a claimant's functional limitations or restrictions, and then assess his or her work-related abilities on a function-by-function basis. See Masterson, 363 F.3d at 737; Harris v. Barnhart, 356 F.3d 926, 929 (8th Cir. 2004). The RFC need only include a plaintiff's credible limitations. See Tindell v. Barnhart, 444 F.3d 1002, 1007 (8th Cir. 2006) ("The ALJ included all of Tindell's credible limitations in his RFC assessment, and the ALJ's conclusions are supported by substantial evidence in the record.").

Pursuant to the above requirements, after finding that Plaintiff's subjective complaints were not fully credible, see id., and after addressing the evidence of record is great detail, see Lauer, 245 F.3d at 704, the ALJ found that Plaintiff could perform the full range of work at all exertional levels. Additionally, the ALJ found that Plaintiff had non-exertional limitations but that he could understand, remember, and carry out at least simple instructions and non-detailed tasks. Incorporating Plaintiff's credible non-exertional limitations into Plaintiff's RFC, the ALJ found that Plaintiff could not work in a setting that includes constant or regular contact with the general public; he could not perform work that includes more than infrequent handling of customer complaints; and he could not work in close proximity to alcohol or controlled substances.

Plaintiff contends that the ALJ did not include a narrative statement in his decision to support his RFC determination. (Doc. 16 at 17). An ALJ is not required to provide each limitation in the RFC immediately followed by a list of the specific evidence supported this limitation. SSR 96-8p. To require the ALJ to do so would not only undermine the Eighth Circuit's directive that a claimant's RFC be based on "all of the relevant evidence," but would result in duplicative discussions of the same evidence. See McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000); see also Barnhart v. Thomas, 540 U.S. 20, 28-29 (2003) ("[T]he Social Security hearing system is probably the largest adjudicative agency in the western world [and] the need for efficiency is self-eviden[t]) (internal quotation and punctuation marks omitted). The court finds that the body of the ALJ's decision reflects, in detail, that he thoroughly considered all of Plaintiff's alleged impairments.

Plaintiff also argues that the ALJ's RFC determination resulted from an improper evaluation of the medical opinions in the record, including Dr. Chaowaratana's opinion that Plaintiff could not perform sedentary or light work, and Dr. Malik's opinion that it would be difficult for Plaintiff to maintain any employment. (Doc. 16 at 18-22). The court has found above that the ALJ gave proper weight to Dr. Chaowaratana's and Dr. Malik's opinions and that his decision in regard to these opinions is based on substantial evidence. In conclusion, the court finds that the ALJ's RFC determination is based on substantial evidence and that it is consistent with the regulations and case law.

The ALJ posed a hypothetical to a VE which included all of Plaintiff's credible limitations, as set forth in Plaintiff's RFC. Martise v. Astrue, 641 F.3d 909, 927 (8th Cir. 2011) ("The ALJ's hypothetical question to the vocational expert needs to include only those impairments that the ALJ finds are substantially supported by the record as a whole.") (quoting Lacroix v. Barnhart, 465 F.3d 881, 889 (8th Cir. 2006)); Wildman v. Astrue, 596 F.3d 95  9, 969 (8th Cir. 2010)

("[T]he ALJ was not obligated to include limitations from opinions he properly disregarded."); Guilliams v. Barnhart, 393 F.3d 789, 804 (8th Cir. 2005) (holding that a proper hypothetical sets forth impairments supported by substantial evidence and accepted as true by the ALJ). The VE testified that there was work available in the national economy which Plaintiff could perform, including housekeeper/cleaner, and hand presser. Based on the testimony of the VE, the ALJ found Plaintiff was not disabled. See Martise, 641 F.3d at 927 ("Based on our previous conclusion ... that 'the ALJ's findings of [the claimant's] RFC are supported by substantial evidence,' we hold that '[t]he hypothetical question was therefore proper, and the VE's answer constituted substantial evidence supporting the Commissioner's denial of benefits.'") (quoting Lacroix v. Barnhart, 465 F.3d 881, 889 (8th Cir. 2006)); Robson v. Astrue, 526 F.3d 389, 392 (8th Cir. 2008) (holding that a VE's testimony is substantial evidence when it is based on an accurately phrased hypothetical capturing the concrete consequences of a claimant's limitations). As such, the court finds that the ALJ's determination that Plaintiff is not disabled is based on substantial evidence.

## IV.
## CONCLUSION

For the reasons set forth above, the court finds that substantial evidence on the record as a whole supports Commissioner's decision that Plaintiff is not disabled.

Accordingly,

**IT IS HEREBY RECOMMENDED** that the relief sought by Plaintiff in his Complaint and Brief in Support of Complaint be **DENIED** (Docs. 1, 16);

**IT IS FURTHER RECOMMENDED** that a separate judgment be entered incorporating this Report and Recommendation.

The parties are advised that they have fourteen (14) days in which to file written objections to these recommendations pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact. See Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990).

Dated this 29th day of July, 2014.

/s/Noelle C. Collins
NOELLE C. COLLINS
UNITED STATES MAGISTRATE JUDGE